UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MICHAEL A. KEAL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No.: 1:16-cv-0811-DML-SEB |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security, Administration, | ) |
| Defendant. | ) |

# Decision on Complaint for Judicial Review

Plaintiff Michael A. Keal applied for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning July 10, 2012. Acting for the Commissioner of the Social Security Administration following a hearing held on September 17, 2014, administrative law judge (ALJ) D. Lyndell Pickett issued a decision on October 28, 2014, concluding Mr. Keal is not disabled. The Appeals Council denied review on February 26, 2016, rendering the ALJ's decision for the Commissioner final. Mr. Keal timely filed this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Keal contends the Commissioner's decision must be reversed and remanded because (1) the ALJ erred at step 4 because his residual capacity finding precludes the ability to perform Mr. Keal's past relevant "composite job",

---

[1]     Nancy A. Berryhill is now Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 35(d), she is substituted for Carolyn W. Colvin as the defendant.

(2) the ALJ erred by failing to analyze properly the opinion of the examining source, and (3) the ALJ neglected to consider Mr. Keal's stellar work history in assessing his credibility.

The court will first describe the legal framework for analyzing disability claims and the standard of review and then address Mr. Keal's assertions of error.

**Standard for Proving Disability**

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Mr. Keal is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. §423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. See 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 1520(c). The

third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, education, and RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1560(c)(2).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ's decision need not address every piece of evidence, but the ALJ cannot ignore an entire line of evidence that undermines the ALJ's conclusions, and the ALJ must connect the evidence to his or her conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

**Analysis**

I. **The ALJ's Sequential Findings**

Mr. Keal was born in 1959, was 53 years old when he applied for social security benefits, and was 55 years old at the time of the ALJ's decision. The ALJ found that he met the insured status requirements of the Social Security Act through March 31, 2017, and he had not engaged in substantial gainful activity since the July 10, 2012 alleged onset date. At steps two and three, the ALJ found that Mr. Keal has severe impairments of degenerative disc disease of the cervical

4

and lumbar spine and peripheral vascular disease, but no impairment or impairments that meet or medically equal the severity of a listed impairment.

In the RFC, the ALJ limited Mr. Keal to a full range of light work as defined in 20 C.F.R. § 404.1567(b). Given this RFC, and based on the opinion of a vocational expert (VE), the ALJ decided that Mr. Keal's past relevant work was as a construction superintendent (DOT #182.167-026) and that he was capable of performing that work as it was generally performed. Accordingly, the ALJ decided at step four that Mr. Keal is not disabled. The ALJ did not reach step five.

## II.     Mr. Keal's Assertions of Error

In seeking judicial review, Mr. Keal advances three main arguments. First, he contends the ALJ erred at step four because the RFC finding precludes him from performing his past relevant "composite job" of construction superintendent. Second, he maintains the ALJ erred in weighing the opinion of the consulting examiner, Kurt Jacobs, M.D. Third, he argues the ALJ erred in failing to consider his stellar work history when assessing his credibility. The court will address the second and third assertions of error before moving to the first.

### A.  The ALJ's Analysis of the Consulting Examiner's Opinion

The court first considers whether the ALJ erred in analyzing the consulting examiner's opinion. Dr. Jacobs opined that Mr. Keal had greater limitations than those found by the ALJ's RFC. Had the ALJ accepted Dr. Jacobs's opinion, the ALJ could not have found Mr. Keal capable of light work.

5

Generally, more weight is given to the opinion of a medical source who examines a claimant than to the opinion of a non-examining source. 20 C.F.R. §404.1527(c)(1). However, unlike the opinion of a treating source, the opinion of a consulting examiner is not entitled to controlling weight. *See Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009); 20 C.F.R. § 404.1502 (defining a nontreating source as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]"). Instead, the ALJ must evaluate the opinion of a consulting examiner in light of the other factors identified in the regulations, including supportability, consistency with other substantial evidence in the record, and whether the source is a specialist on the medical issues given in the opinion. *See Simila*, 573 F.3d at 514 (citations omitted); 20 C.F.R. § 404.1527(c)(3)-(6) (listing factors). The ALJ is not bound to accept a consulting examiner's opinion simply because the examiner was hired by the agency. *See Knapp v. Colvin*, Civil No. 1:16cv191, 2017 WL 2240980, at *11 (N.D. Ind. May 19, 2017). Nonetheless, the ALJ must give good reasons supported by substantial evidence in the record for discounting an examining source's opinion. *See, e.g., Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The ALJ gave the following reasons for according "little weight" to Dr. Jacobs's opinion on Mr. Keal's functional limitations: (1) the physician's examination was not consistent with most of the other examinations in the record, and (2) the limitations were those reported by Mr. Keal, suggesting Dr. Jacobs

6

substituted Mr. Keal's judgment for his own.  These are sufficient reasons supported in the record for discounting the consulting examiner's opinion.

On examination, Dr. Jacobs found Mr. Keal unable to tandem walk or squat, and he had sensation loss in his arms, hands, legs, and feet.  (R. 456).  He also had limited range of motion on cervical rotation as well as with elbow flexion and pronation.  (R. 457).  In contrast, other physical examinations in the record consistently reflected, as the ALJ found, minimal or normal findings.  (*See, e.g.,* R. 17 (referring to R. 371 (September 2011 exam finding no pain getting on or off the exam table and no swelling, tenderness, abnormal reflexes, motor weakness, or loss of sensation); R. 435 (October 2012 exam finding some tenderness of lumbar spine but normal gait, normal ability to heel-toe walk, and normal range of motion, strength, sensation, and reflexes); R. 497 (May 2014 exam finding normal range of motion, strength, stability, and sensation, and no pain)).  As noted, consistency with the record as a whole is a factor to be considered in deciding the weight given to any medical opinion.

Mr. Keal argues that the ALJ simply speculates that Dr. Jacobs's opinion is based on Mr. Keal's own subjective complaints.  The court disagrees.  Several of the limitations seem to reiterate Mr. Keal's self-report to Dr. Jacobs.  In the section of his report entitled, "Physical Examination" Dr. Jacobs wrote, "Claimant has self-prescribed cane, used on occasion. Cannot stand or walk for 2 hours in an 8 hour day. Can carry 10 pounds while using cane."  (R. 455-56.)  These are conclusions, not examination findings.  No one suggests that Dr. Jacobs's examination lasted for

7

an eight-hour duration. An ALJ need not rely on a medical opinion as to a claimant's limitations that are merely suggested by the claimant's own subjective report, rather than by objective medical signs and exam findings. *See, e.g., Simila*, 573 F.3d at 516 ("An ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings."); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (no error in giving greater weight to state-agency physicians' opinions than to treating physician's opinion where the latter's opinion about claimant's limitations "were based almost entirely on [claimant's] subjective complaints rather than objective evidence" and opinion was internally inconsistent); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (stating "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints"). The ALJ reasonably inferred that Dr. Jacobs's opinion as to Mr. Keal's limitations was based mostly on Mr. Keal's subjective complaints.

Mr. Keal suggests that the ALJ also relied on the fact that Dr. Jacobs examined him only once, but it is unclear the one-time examination was a reason the ALJ gave the opinion little weight. Rather, the ALJ noted that Dr. Jacobs had examined Mr. Keal on a single occasion and reported within the bounds of his professional certifications, factors that, in the context of the ALJ's decision, tended to lend credence to the report. Indeed, the ALJ mentioned these factors and then followed them with the word, "yet," before noting the lack of consistency with the record and the apparent adoption of Mr. Keal's subjective complaints. Thus, the

8

context suggests that the ALJ did not discount Dr. Jacobs's opinion because he examined Mr. Keal only once. But even if he did, the other reasons the ALJ gave for discounting the opinion are sufficient and supported in the record.

In addition, Mr. Keal maintains that Dr. Jacobs is a specialist in occupational medicine, referring to a physician directory website. But there is no evidence that the ALJ was aware of this alleged specialty. And Mr. Keal argues the ALJ should have re-contacted Dr. Jacobs to obtain clarification of the physician's opinion, but Mr. Keal has not shown that the ALJ erred in failing to re-contact Dr. Jacobs. *See Simila*, 573 F.3d at 516 (an ALJ is not required to re-contact a medical source simply because the ALJ finds the evidence fails to support the source's opinion).

Therefore, the court finds that the ALJ gave good reasons for according Dr. Jacobs's opinion little weight.

**B. The ALJ's Credibility Assessment and Work History**

Mr. Keal challenges the ALJ's credibility determination. An ALJ's credibility determination is reviewed deferentially and will be overturned only if it is "patently wrong." *Craft v.* Astrue, 539 F.3d 668, 678 (7th Cir. 2008). The credibility determination must contain specific reasons supported by the evidence and be sufficiently specific as to allow for meaningful review. *See id.* Mr. Keal first asserts that the "arguments with respect to the ALJ's rejection of medical opinions describing Plaintiff's work-related limitations are, naturally, also attacks on the ALJ's credibility finding." (R. 14 at 19). And he makes two specific arguments about the ALJ's credibility analysis: (1) the ALJ failed to discuss Mr. Keal's

9

exemplary work history, and (2) the ALJ improperly relied on Mr. Keal's application for unemployment insurance benefits. The court has already addressed the challenge to the ALJ's weighing of the consulting examiner's opinion and does not repeat that discussion here.

In determining that Mr. Keal's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ gave specific reasons supported by evidence in the record. He first noted the findings from x-rays of Mr. Keal's cervical spine, showing mild-to-moderate neuroforaminal narrowing, but otherwise unremarkable findings, as well as diagnostic imaging of his lumbar spine, indicating multi-level disc bulging, but no canal compromise, nerve root impingement, or significant narrowing. (R. 17). Second, the ALJ noted the stability of the diagnostic studies over a nearly five-year period, which revealed that Mr. Keal's impairment was at the same level of severity before the alleged onset date. Given that the severity level remained constant, the ALJ reasoned that the fact the impairment did not preclude Mr. Keal from working at the medium level of exertion "strongly suggested" it would not currently prevent him from working. (*Id.*) Third, the ALJ relied on physical examinations from 2011 through May 2014 that consistently, though not exclusively, reflected minimal or normal findings. The ALJ considered other factors, including Mr. Keal's conservative treatment; use of prescription medications, which he reported were at least moderately effective; improvement through physical therapy despite non-compliance with a home exercise program; and relief from nonmedicinal palliatives.

In addition, the ALJ considered Mr. Keal's daily activities, his inconsistent statements regarding the reason why he stopped working (whether he was laid off or because of his condition), and the medical opinion evidence among other factors in assessing Mr. Keal's statements about his symptoms and their limiting effects.

The ALJ did not mention Mr. Keal's work history. The Seventh Circuit has said that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (quoting *Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir. 2015)). Mr. Keal has a good work record: he has covered earnings for every quarter over a thirty-two year period. Nonetheless, "work history is just one factor among many, and it is not dispositive." *Id.* In this case, the ALJ's silence on Mr. Keal's work history "is not enough to negate the substantial evidence supporting the adverse credibility finding." *Id.*

And Mr. Keal errs in arguing that the agency policy prohibits reliance on receipt of unemployment benefits as a negative credibility factor. The memoranda he cites merely indicate that receipt of unemployment benefits does not *preclude* the receipt of social security benefits. Indeed, the Seventh Circuit has never said that a claimant's "decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability." *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). The ALJ did not err in relying on Mr. Keal's application for unemployment benefits, representing that he

11

was "ready, able and willing to work," as one factor for concluding that his statements were not entirely credible. The ALJ's credibility assessment was not patently wrong.

### C. The Alleged Step-Four Error

Mr. Keal argues that his past relevant work as a construction superintendent was a "composite job," meaning that his duties encompassed "significant elements of two or more occupations, and, as such, have no counterpart in the DOT." *See* SSR 82-61. "Without a counterpart in the DOT, it is not possible to use the DOT alone … to determine how the job is generally performed in the national economy." *McDowell v. Berryhill*, Case No. 1:15-cv-01477-RLY-DML, 2017 WL 913950, at *7 (S.D. Ind. Feb. 8, 2017) (citing SSR 82-61), *order adopting report and recommendation*, 2017 WL 897304 (S.D. Ind. Mar. 7, 2017). Mr. Keal argues that the ALJ's RFC finding precludes the ability to perform this composite job. The ALJ's alleged step-four error was harmful, he submits, because if the ALJ had reached step five of the sequential analysis, the Medical-Vocational Guidelines would direct a finding of disability.

As noted above in the court's description of the sequential analysis, at the fourth step, the ALJ considers the claimant's RFC and past relevant work. If the claimant can do his past relevant work, he is not disabled. *See* 20 C.F.R. §1520(a)(4)(iv). A claimant need not be able to perform his past work in the manner he performed it *and* in the manner the work is generally performed in the national economy. If he can do either, he is not disabled. *Getch v. Astrue*, 539 F.3d 473, 482

(7th Cir. 2008) (concluding that even if the functional demands of the claimant's past work are greater than his capability, if he can perform the demands of that job as it is generally performed, he is not disabled); 20 C.F.R. § 404.1560(b)(2); SSR 82-61. Here, the ALJ did not find that Mr. Keal could perform his past work as a construction superintendent in the manner he performed it; rather, the ALJ found he can perform it as generally performed. (R. 20). This finding was based, in part, on the VE's testimony about how the job is generally performed in the national economy, and that testimony was based solely on the DOT. (*See id.*; R. 46-47.)) If Mr. Keal's work as a construction superintendent was a "composite job," this was error.

"Where a claimant's past work was clearly a composite job, an ALJ 'may not find a claimant capable of performing [his] past relevant work on the basis that [he] can meet some of the demands of [his] previous position, but not all of them.'" *Combs v. Berryhill*, No. 1:16-cv-02386-JMS-TAB, 2017 WL 2728619, at *6 (S.D. Ind. June 26, 2017) (quoting *Peterson v. Astrue*, Cause No. 1:09-CV-00209, 2010 WL 3219293, at *6 (N.D. Ind. Aug. 12, 2010)). "Where the record does not clearly demonstrate that a claimant's past job was a composite job, courts in this circuit have examined several factors in reviewing an ALJ's determination, including: (1) whether the claimant was represented by counsel during the hearing before the ALJ; (2) whether the claimant raised the issue of a composite job at the hearing; and (3) whether the claimant characterized his past relevant work as a composite job in her testimony before the ALJ. *Id.* (citations omitted). In

13

reviewing the ALJ's decision, the court cannot reweigh the evidence or make a finding as to whether Mr. Neal's superintendent job was a composite job. *See Combs*, 2017 WL 2728619, at \*6.

It is not clear that Mr. Keal's work as a superintendent was a "composite job," so the court considers the above factors. First, Mr. Keal was represented by counsel during the hearing before the ALJ. Second, although Mr. Keal argues that the composite job issue was "squarely before the ALJ" based on counsel's representations at the hearing and a pre-hearing memo, the court disagrees. At the hearing, counsel noted that when Mr. Keal was working as an owner/supervisor, he was still performing the construction work that he did as a laborer. (R. 29). The VE's testimony indicated she understood that Mr. Keal was doing the construction work when he was an owner, but not necessarily when he was a superintendent. (See R. 45 (VE noting "the attorney stated that when the Claimant had his own business in construction, he was also doing the labor")). If there had been a misunderstanding on the VE's part, Mr. Keal's counsel made no effort to correct it. And while Mr. Keal's prehearing memorandum may have hinted that he worked in a composite job as a superintendent (see R. 207 (arguing that Keal worked as a construction worker and supervisor from 1999-2007 and performed the same type of work as a construction owner and supervisor that he did a general worker)), his counsel did not use the term "composite job" and did not contend there was a conflict between the DOT description and the physical requirements of the

superintendent job.  Thus, Mr. Keal did not clearly raise the composite job issue before the ALJ.

Mr. Keal argues that his testimony and description of the job characterize the superintendent position as a composite job.  But neither the ALJ nor Mr. Keal's counsel elicited any testimony from Mr. Keal about his work as a superintendent.  And Mr. Keal did not give any testimony describing the superintendent position as a composite job.  However, he did complete a work history report describing the tasks he performed in his past work.  (R. 161-171).  He wrote that he worked as an owner of a general construction business from January 1994 to June 1999 and as a commercial construction laborer from June 1994 to June 1999.  (R. 163).  He indicated that he worked as a superintendent in residential construction from July 1999 to March 2007.  (*Id.*).  In describing this job, he wrote that he checked and approved all completed work; completed reports, "installed ranges and microwaves"; and "performed punch out duties such as install range and microwave, door hardware, lighting, [and] carried ladders and materials in and out of houses."  (R. 166).  Mr. Keal indicated that he lifted weights up to 75 pounds and frequently lifted weights of 25 pounds.  He also wrote that he was "continuously on the phone or sending emails" and that he spent 95% of his time supervising other people.  (*Id.*)  Although Mr. Keal indicated that he performed some construction work as superintendent, the extra tasks do not appear to have been a significant element of his job; indeed, supervising others occupied 95% of his time.  *See Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013) (noting that "past relevant work … refers to the

type of job, not to idiosyncratic duties that the employer may have imposed"); SSR 82-61 (a composite job has "significant elements of two or more occupations"). Besides, the work history report suggests that if any of Mr. Keal's past work was a composite job, it was the construction owner position.

Also, the VE testified that Mr. Keal's past relevant work included work as (1) a construction business owner, in which he was a house repairer or remodeler, with a corresponding DOT # 869.381-010, (2) a construction superintendent with a corresponding DOT # 182.167-026, and (3) as an assembler of air conditioning units and other appliances with a corresponding DOT # 827.684-010. (R. 46). She stated that the construction business owner job was at the medium exertional level and the construction superintendent job was at the light exertional level, but Mr. Keal reported working at the medium exertional level. (*Id.*). And the VE testified that none of her testimony about job descriptions or exertional requirements conflicted with the DOT. (R. 49). Mr. Keal's counsel did not question the VE about her classification of the past relevant work. Nor did counsel ask any question of the VE that might suggest any of Mr. Keal's past relevant work was a composite job.

Therefore, based on consideration of the factors other courts in this circuit have used, the court determines that the ALJ did not err in declining to consider Mr. Keal's superintendent position as a composite job. The ALJ found that Mr. Keal has the RFC to perform the full range of light work, and the VE testified that Mr. Keal's past work as a construction superintendent as it was typically performed

was at the light exertional level. As a result, the ALJ's RFC finding does not preclude Mr. Keal from performing his past relevant work as a superintendent.

Then the ALJ asked the VE whether a person with the same age, education and vocational background as Mr. Keal who had an RFC to perform light work would be able to do any of his past relevant work. The VE said, "Yes" and identified the construction superintendent job as typically performed according to the DOT, but not as Mr. Keal said he had performed it. (R. 46-47). Thus, the VE's testimony provided substantial evidence to support the ALJ's finding that Mr. Keal could perform his past relevant work as a construction superintendent as generally performed. The ALJ did not err at step four.

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Mr. Keal is not disabled.

So ORDERED.

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Dated: July 31, 2017

Distribution:

All ECF-registered counsel of record by email through the court's ECF system